IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1999 SESSION

FILED

April 23, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| ANTHONY JEROME STOKES, | * | C.C.A. No. 03C01-9710-CR-00477 |
| Appellant, | * | HAMILTON COUNTY |
| VS. | * | Honorable Douglas A. Meyer, Judge |
| STATE OF TENNESSEE, | * | (Post-Conviction) |
| Appellee. | * | |

For Appellant:

Rebecca Garren Parker, Esq.
118 Lee Parkway Drive, Suite 201
Chattanooga, TN  37421

For Appellee:

John Knox Walkup
Attorney General & Reporter

Ellen H. Pollack
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN  37243

C. Leland Davis
and
Caldwell Huckabay
Assistant District Attorneys General
City and County Courts Building
Chattanooga, TN  37402

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The petitioner, Anthony Jerome Stokes, appeals the trial court's denial of his application for post-conviction relief. In this appeal of right, he presents two issues for review: (I) whether the trial court erred by concluding that the guilty pleas of the petitioner were made knowingly and voluntarily and (II) whether the petitioner received the ineffective assistance of counsel.

We affirm the judgment of the trial court.

On June 15, 1995, the petitioner entered pleas of guilt to first degree murder and second degree murder. As part of the plea agreement, the state withdrew its request for the death penalty and voluntarily dismissed an especially aggravated robbery charge. The trial court imposed a Range II, thirty-year sentence for second degree murder and a consecutive sentence of life for the first degree murder.

In his petition for post-conviction relief, the petitioner contended that his guilty pleas were unlawfully induced by his trial counsel who placed him in fear of the death penalty. He also argued that his pleas were not knowingly entered because he was taking medication at the time of the plea and because the plea agreement was amended without explanation after the petitioner signed it. Further, the petitioner claimed that his counsel mistakenly described the submission hearing as only a "practice run," failed to file any motions to suppress illegally obtained evidence, and erroneously advised that his guilty plea could be withdrawn for any reason within thirty days. Finally, he contended that his conviction was based upon evidence obtained pursuant to an unlawful arrest.

2

At the post-conviction hearing, the petitioner testified that he wanted a trial despite the urging of his counsel to enter a plea agreement.  He claimed that his trial counsel tried to convince the petitioner's family and friends to influence him to plead guilty.  The petitioner maintained that he pled guilty because trial counsel told him on several occasions that he would "fry" if he went to trial and that he was persuaded to enter the plea only because his trial counsel advised that he could automatically withdraw his plea within thirty days if he changed his mind.[1]

The petitioner also testified that his trial counsel informed him that he would have a "practice run" the day before the guilty plea hearing.  He contended that an hour before the "practice run," one of his attorneys told him that the state had agreed to the plea offer and wanted to proceed with the plea submission hearing that day.  The petitioner testified that he felt unprepared and misled and that he did not have an opportunity to discuss the plea with his family.  He insisted that pain medication prevented him from thinking clearly.  While he acknowledged having stated during the submission hearing that he was not impaired, the petitioner explained at the evidentiary hearing that he had been instructed by his counsel to tell the trial judge what he wanted to hear.  He insisted that his attorneys did not explain a handwritten paragraph of the plea agreement, as follows: "I recognize that I'm pleading out of my range on 198820.  I am doing this in return for the State's agreement to allow me to plead to 198820 as a murder in the second degree."  The petitioner claimed that but for these errors, he would not have pled guilty.

had suffered at the hands of arresting officers.  He insisted that if his trial counsel had succeeded in suppressing some evidence, he would not have pled guilty.

_____

[1]The petitioner alleges that on July 17, 1995, he filed a motion to withdraw his guilty plea but he was never notified of the court's ruling.  The petitioner states that the motion was filed under seal by his attorneys.  The motion is not in the record.

On cross-examination, the petitioner asserted that he wanted a new trial. He admitted that he shot one of the victims during an argument, explaining that he tried to hit her with the gun and the gun discharged. The petitioner denied shooting the other victim and blamed a William Harrison for her murder. The petitioner admitted during his evidentiary hearing that at the guilty plea proceeding, he had informed the trial court that he entered his pleas voluntarily after consulting with his attorneys and his mother. He acknowledged having said that his plea was in his best interest and that his attorneys had answered all of his questions.

Attorneys Karla G. Gothard and Mary Ann Green of the public defender's office and Attorney Howard Barnwell had been appointed to represent the petitioner at trial. At the post-conviction evidentiary hearing, Attorney Gothard testified that during an initial interview with the petitioner, an attorney from her office had warned, "You are going to fry." Upon learning of the inappropriate statement, she had removed that attorney from the case. Nonetheless, Attorney Gothard recalled that she had a number of conversations with the petitioner about the possibility that he would receive a death sentence. In her opinion, the case was "prime" for a death penalty verdict because of racial overtones (the two victims were white females and the petitioner is a black male) and because of the nature of the wounds, which were close contact wounds to the head, one of which was execution style. Attorney Gothard testified that her aim had been to convince the petitioner to plead guilty to avoid the death penalty. Although she acknowledged having had discussions with the petitioner's family members, she denied trying to have them influence the petitioner. She remembered a five-hour meeting with the petitioner, his attorneys, family members, and friends during which she had presented her best assessment of the state's evidence against him. It was her opinion that the petitioner and his family were unable to recognize the severity of the charges

4

against the petitioner.

Attorney Gothard testified that until just before the plea, she also believed there would be only a "practice run" on Thursday and that, on Friday, when the victims' families could attend, the submission hearing would take place. On Thursday, however, the assistant district attorney informed her that the victims' family members were present and wanted to proceed with the plea that afternoon or else proceed to trial. When Attorney Gothard told the petitioner to prepare to enter his plea that day, he asked to speak to his mother first. Attorney Gothard preferred, however, that he not speak to his mother:

> I felt like his mother was really, not really very capable of properly advising him, and he would talk to her and she would ... tell us, "I've prayed about it and things are going to work out okay. He's not going to spend any time in jail." And I didn't want [the petitioner] to talk to her again.

Nevertheless, Attorney Gothard contacted the petitioner's mother as requested. She attended the plea hearing. As Attorney Gothard and the petitioner waited for the petitioner's mother to arrive, the prosecutor had informed the trial court that they could continue the proceeding until the next day, if necessary. Attorney Gothard preferred that the plea be "now or never ... we needed to go ahead ...." Attorney Gothard identified the plea agreement and the handwriting of her co-counsel Mary Ann Green. She stated that the language regarding the petitioner pleading out of his range would have been initialed had it been added after the petitioner signed the form. While she could not recall how much explanation had been provided to the petitioner regarding the terms of the plea agreement, Attorney Gothard did remember that there were many discussions among counsel and the defendant as to suppression of evidence. She testified that she had reviewed the videotaped conversation with William Harrison and concluded that there were no issues which would lead to a more favorable result for the petitioner. She testified that she never discussed withdrawal of the guilty plea with the petitioner but did recall a

5

conversation in which Attorney Barnwell had mentioned waiting thirty days or "holding your breath for thirty days until it became final." Although she intended to caution the petitioner that withdrawal of a plea was unlikely, she conceded that she had not done so.

Muchaka Am'al Zukinta, an inmate at the Bledsoe Regional Correctional Facility, testified that petitioner's trial counsel, Attorney Green, had asked him to speak to the petitioner about Islam because the petitioner had converted to Islam and had spiritual questions about entering guilty pleas. He stated that it appeared to be counsel's aim that he convince the petitioner to plead guilty.

Attorney Green testified that she had tried to educate the petitioner and his family about the reality of the death penalty. She stated that based upon all the facts she was able to ascertain, she thought the petitioner should plead guilty. She denied having told the petitioner that he would "fry" but was aware that someone else in her office had used that term. Attorney Green agreed that the state provided very little notice that the offer of a "practice run" had been withdrawn. She stated that when she heard that the plea was to be entered on Thursday rather than Friday, she immediately tried to contact the petitioner's family. She acknowledged that the prosecutor had warned that if the petitioner did not enter a plea that day, he would have to face trial. She testified that she had no recollection of anyone advising the petitioner that he could withdraw the guilty plea within thirty days. Attorney Green denied pressuring the petitioner into accepting the terms of the plea and contended that she was unconvinced that the petitioner needed to enter a guilty plea until she and the defense team had completed their investigation. She maintained that at the time of the plea, the defense team was prepared for trial.

6

Attorney Barnwell testified that defense counsel conducted a thorough investigation. He denied that the defense team ever approached the case from the standpoint that the petitioner was guilty and there was no choice other than a guilty plea. He stated that as the investigation progressed, the team reached a general consensus that if the petitioner proceeded to trial, he would be convicted and sentenced to death. He had arranged for the petitioner to talk with Attorney John Oliva of the Capital Case Resource Center about conditions on death row but the petitioner seemed to know as much or more about death row than Attorney Oliva. Attorney Barnwell testified that the petitioner had agreed at an earlier point to enter a plea agreement but at the last moment, he had refused to proceed. Afterward and in the presence of the petitioner, Attorney Barnwell had commented, "He has made a decision. If that is his decision, we will give him the best damn defense that we can, but in my opinion, he's wanting to die." He remembered that after several days passed during which the defense team did not have contact with the petitioner, the petitioner telephoned the public defender's office and indicated that he wanted to enter a plea. He recalled Attorneys Gothard and Green explaining the terms of the various proposed plea agreements to the petitioner in "painstaking[]" detail. Attorney Barnwell stated that the public defender's office had been very thorough in their investigation and preparation of the case. He denied having informed the petitioner that he would be permitted to withdraw his plea within thirty days. Attorney Barnwell did, however, acknowledge that he may have said, "we can hold our breath until we get to court."

The trial court denied the petition for post-conviction relief in pertinent part, as follows:

> I Unlawfully Induced Guilty Plea
> [P]etitioner telephoned the Public Defender's Office, ... a few days before his plea, and said "I want to plead guilty[."] None of the attorneys had spoken to him in two to three days. He was not under pressure to plead guilty at that time.

7

The transcript of the guilty plea hearing clearly shows that petitioner was freely and voluntarily waiving his right to a jury trial and that he knew and understood what he was doing. The medication he was taking did not affect his reasoning. Months before, upon questioning by the court, petitioner had withdrawn his proposed guilty plea. If he had not wanted to plead guilty on June 15, 199[5], he knew how to stop it.

Gothard felt she had not "legally" pressured the petitioner to plead guilty, but that morally she may have invaded his province .... Green and Barnwell do not feel that they pressured him into pleading guilty. They and Gothard explored every possible issue to raise in his defense. Green and Barnwell felt they had given petitioner an opportunity to make an informed decision.

## II Evidence from an Unlawful Arrest

Other than petitioner's testimony, there was no proof that the detectives abused, threatened, or mistreated him in getting a statement from him, after his arrest. His testimony was not convincing. Gothard said video of his statement indicated he was talking freely. William [] Harrison had worn a wire, but had not coerced him. There was not evidence to suppress.

## III Ineffective Assistance of Counsel

From the testimony of the t[h]ree attorneys, it is obvious that the services they rendered were within the range of competence demanded by attorneys in criminal cases. They realized their heightened responsibilities in a death penalty case. They and their investigators talked to everyone they felt might have testimony to help their defense, they obtained the assistance of experts. They left no stone unturned and were prepared to try the case.

Petitioner told his attorneys at various times that (1) he did not shoot either young lady[,] (2) he shot one young lady, and (3) he shot both young ladies. During this proceeding he admitted he shot April Stewart, but that it was accidental. ...

[T]his [C]ourt finds that the petitioner has failed to carry the burden of proving the asserted violation of his rights. The Court finds that his plea was not coerced or forced, that there was not unlawful evidence to suppress, and that he was not denied effective assistance of counsel.

I

The petitioner initially contends that his plea was neither knowing nor voluntary because his trial counsel misled him with a "practice run" and because he did not understand that he was pleading as a Range II offender to second degree

8

murder.

Under our statutory law, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the findings of fact by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderates against those findings. Clenny v. State, 576 S.W.2d 12 (Tenn. Crim. App. 1978).

In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court ruled that defendants should be advised of certain of their constitutional rights before entering pleas of guilt. Included among those required warnings are the right against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Id. at 243. The overriding Boykin requirement is that the guilty plea must be knowingly and voluntarily made. Id. at 242-44. If the proof established that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats ....'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

Initially, the petitioner asserts that his plea was neither knowing nor voluntary because his attorneys "tricked" him by assuring him the proceeding was a "practice run," when in actuality, the proceeding was real. The trial court found that the petitioner knew and understood his actions in entering the guilty plea. Implicit in the trial court's findings is that counsel did not trick the petitioner with the concept of a "practice run." The trial court concluded that if the petitioner had decided that he

9

did not want to enter guilty pleas, he could have so informed the court, just as he had done on a previous occasion. The petitioner acknowledged during the evidentiary hearing that he did not feel he was "tricked" but hinted that he had been misled. His attorneys testified that they were surprised when the state withdrew its offer of a "practice run" and demanded immediate acceptance of the plea agreement. In our view, the petitioner has failed to meet his burden of showing that the evidence preponderates against the trial court's findings.

Secondly, the petitioner claims that his plea was not knowingly entered because he did not understand the handwritten paragraph pertaining to pleading out of his range. Although Attorney Gothard could not recall how much explanation had been provided to the petitioner regarding this provision, she did testify that if the paragraph had been added after the petitioner signed it, her custom was to have the changes initialed. Attorney Barnwell testified that Attorneys Gothard and Green explained the agreement to the petitioner in painstaking detail. Moreover, at the guilty plea proceeding, the trial court explained to the petitioner that the plea agreement was outside of his range, an acceptable practice. The petitioner knew that the state had agreed to reduce the charge of first degree murder to second degree murder and dismiss the aggravated robbery charge in return for his guilty plea and was advised that his sentence for second degree murder would be thirty years. The petitioner acknowledged in the trial court that he understood he would likely serve ten and one-half years for second degree murder, which is thirty-five percent of the sentence. From all of this, we must conclude that the record supports the trial court's conclusion that the petitioner entered a knowing and voluntary plea.

II

Next, the petitioner maintains that the trial court erred by determining he had been provided with effective assistance of counsel. He contends that his

10

attorneys were ineffective because they did not file any motions to suppress evidence despite discussing such options. He also claims that Attorney Barnwell erroneously advised that he had the option to withdraw his guilty plea within thirty days of its entry.

In order for the petitioner to be granted relief on grounds of ineffective counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984). This two-part standard, as it applies to guilty pleas, is met when the petitioner establishes that, but for his counsel's errors, he would not have pled guilty and would have insisted on a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Here, the petitioner testified that arresting officers beat and abused him in order to secure a confession and that his defense counsel failed to file motions to suppress this evidence. Attorney Gothard testified that while they had discussed filing motions to suppress, she had ultimately concluded that there were no meritorious issues to address. The trial court found the petitioner's testimony unreliable and accredited that of Attorney Gothard. The record does not preponderate otherwise.

The petitioner also contended that one of his attorneys advised him he could withdraw his guilty plea within thirty days under Rule 32, Tenn. R. Crim. P. His attorneys, however, denied that any such statement was made. The trial court determined that the services rendered by petitioner's counsel were within the necessary range of competence, that the attorneys realized they had "heightened

responsibilities" due to the nature of the charges, and that they had thoroughly investigated and prepared his defense.  Implicit in these findings is that the trial court rejected the petitioner's assertion that he was misadvised of the law governing the withdrawal of his guilty plea.  From all of this, it is our view that the petitioner has been unable to demonstrate that the evidence preponderates against the finding made by the trial court that he had been represented within professional guidelines.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Norma McGee Ogle, Judge


_____
John K. Byers, Senior Judge