# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 4, 2003

## RONGIE LELAND TAYLOR v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Warren County
#### No. F-8152C    James L. Weatherford, Senior Judge

---

### No. M2002-01780-CCA-R3-PC - Filed October 8, 2003

---

The post-conviction court denied the appellant's petition for post-conviction relief following his guilty plea to robbery with an agreed five-year sentence. In this appeal, the appellant argues: (1) his guilty plea was not entered voluntarily and knowingly; and (2) his trial counsel failed to provide him effective assistance relating to the entry of his plea. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA McGEE OGLE, JJ., joined.

Lisa Zavogiannis, McMinnville, Tennessee, for the appellant, Rongie Leland Taylor.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Dale Potter, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Pursuant to a plea agreement, the appellant pled guilty to simple robbery, a reduction from the indicted charge of aggravated robbery, and received a five-year sentence as a Range I standard offender. At the post-conviction hearing, he alleged his guilty plea was not entered voluntarily and knowingly; neither the trial court nor his attorney advised him of his constitutional rights prior to the plea; and his trial attorney was ineffective by failing to adequately investigate his case and failing to explain the plea agreement to him. The post-conviction court denied his petition for post-conviction relief, and this appeal followed.

### PROOF AT POST-CONVICTION HEARING

It was undisputed that the appellant was in a van with co-defendants Freddie Myer and William Ramsey when they drove to a home in rural Warren County, where the appellant remained in the van while the other men entered the home and committed a robbery. All three men were charged with aggravated robbery and theft over $1,000. On September 26, 2000, the appellant pled

guilty to the reduced charge of robbery in exchange for a five-year sentence. At the post-conviction hearing, the parties stipulated the tape recording of the appellant's guilty plea was unavailable; therefore, no transcript of the plea submission hearing was presented.

The appellant testified he attended college for two years, but that his experience with the judicial system was limited to two prior misdemeanor convictions. He stated his trial attorney advised him he had the right to a trial or to plead guilty, but did not explain his constitutional rights in detail. He said the trial judge who took his plea asked him if he understood his right to a jury trial, but he did not recall the judge advising him of his right to an appeal or his right to call witnesses. Regardless, he said he understood he had the right to call witnesses on his behalf and the right not to testify if he so chose.

The appellant indicated he received the state's plea offer of a five-year sentence five days before he entered his plea. The appellant said he told his attorney several times that he did not want to accept the plea offer. According to the appellant, his trial counsel did not review the plea agreement with him.

The appellant stated that the first page of his plea document was "full of constitutional amendments or rights," but said he did not understand them. He conceded he noticed an error regarding the length of his sentence as he was reviewing the document, and that the prosecutor corrected the error when the appellant brought it to his attention. Further, he stated that when the trial court asked him if he had problems with trial counsel, he responded he did not feel he had enough time to prepare for trial. The appellant testified he entered his guilty plea because he felt his case was "inadequately prepared" for trial and trial counsel had not sufficiently investigated his case. The appellant said he reviewed his videotaped statement to law enforcement with trial counsel in May. According to the appellant, the statement was coerced and given involuntarily because he was intoxicated at the time of the statement. He told law enforcement that he was at the scene of the crime, but did not participate in the offense. Although he said he was not aware his attorney had filed a motion to suppress the statement, the record indicates a motion to suppress the statement was filed a week before the appellant's guilty plea.

The appellant testified he did not see his attorney for months, and then, about a week before trial, they had frequent contact over a period of four days during which trial counsel was "popping in and out" and asking the appellant if he wanted to accept the state's plea offer. According to the appellant, it was four days before his guilty plea when trial counsel met with him and his co-defendant Freddie Myers, who had just entered a guilty plea. During that meeting, Myers told the appellant's attorney the appellant "had no knowledge of the crime." The appellant testified he did not see any information about the co-defendant's statements or other potential testimony until "a day or two before" the plea hearing. He stated it was the day prior to his guilty plea when he learned of the potential testimony of a witness who saw him driving the van on the day of the offense. He testified his attorney should have interviewed co-defendant William Ramsey because Ramsey was the driver of the van.

The testimony of the appellant's trial counsel was in many respects at odds with the appellant's testimony. Trial counsel testified it was his practice to advise clients of their rights and

he followed this practice in the appellant's case. He also testified that while he could not recall the trial judge's specific admonitions to the appellant at the time of his guilty plea, it was the trial judge's policy to read each defendant his rights and ask the defendant to respond as to whether or not he understood his rights. Trial counsel stated the appellant entered his plea after the trial court advised him of his constitutional rights. Trial counsel also said the plea document listed the appellant's constitutional rights, and that he did not think the appellant "had a problem knowing what his constitutional rights were."

Trial counsel indicated the appellant had a difficult time deciding whether to plead guilty or go to trial. He said the appellant repeatedly questioned him about the state's evidence, and they had numerous discussions regarding the facts of his case and whether he should enter a plea or go to trial. He advised the appellant that if he did not accept the state's plea offer, it could be withdrawn.

Trial counsel testified he discussed the plea with the appellant on at least two or three occasions. He stated he repeatedly advised the appellant that if he did not accept the offer, he could go to trial. Trial counsel said any reservations the appellant had about his plea were resolved before the plea was entered.

Trial counsel testified he investigated the appellant's case. Trial counsel's time records indicate he met with the appellant on numerous occasions and spent over seventeen hours on the case in addition to court time. He stated he reviewed discovery, which included statements given by the co-defendants. He also said he reviewed the appellant's videotaped confession with the appellant, and they had numerous conversations regarding his confession. According to trial counsel, the appellant admitted he drove the van to the house, that he was aware his co-defendants were planning a robbery, and that they were going to another town to commit a burglary when they were arrested.

While trial counsel did not recall speaking with all the witnesses on the state's witness list, he assumed that he did. He specifically recalled interviewing at least one officer and a witness who said he saw the appellant driving the van shortly before the crime was committed. He knew the victim testified at the preliminary hearing that she did not see the appellant. He stated that if the case went to trial, there would probably have been a stipulation that the appellant remained in the van.

He testified he and the appellant discussed the potential testimony of the co-defendants. He stated he met with the appellant and co-defendant Freddie Myers at the jail three days before the appellant's plea. He said Myers stated he would testify that the appellant was not involved with planning the robbery, but that the appellant drove the van to the house and had some idea that a robbery was going to be committed. Trial counsel indicated the charges against co-defendant William Ramsey may still have been pending at the time the appellant pled guilty; and, if Ramsey's charges were pending at the time of trial, he could not have compelled Ramsey to testify.

Freddie Myers testified at the post-conviction hearing that he spoke with the appellant's trial counsel three days before the appellant entered his plea. Myers said he told the attorney he would

testify the appellant was not involved in the offense and was not aware of what he and Ramsey intended to do.

William Ramsey testified at the hearing that he tried to tell prosecutors the appellant was asleep in the van at the time of the robbery, and that he tried to have a third party contact the appellant's trial counsel. Ramsey acknowledged charges were pending against him, and he was represented by counsel at the time the appellant's case was being prepared for trial. Ramsey stated he would have been willing to testify for the appellant even if it meant testifying about his own involvement in the offense.

The post-conviction court denied the appellant's petition for post-conviction relief after finding trial counsel afforded the appellant with effective representation and the state proved the appellant entered his plea voluntarily and knowingly.

## POST-CONVICTION - STANDARDS FOR REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## I. VOLUNTARY AND KNOWING GUILTY PLEA

The appellant contends the post-conviction court erred in finding his guilty plea was entered voluntarily and knowingly because neither the trial court nor his trial attorney advised him of his constitutional rights before he entered his plea. We do not agree.

The United States Supreme Court in Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1713, 23 L. Ed. 2d 274, 279 (1969), held that defendants must waive certain rights in order for their decision to plead guilty to be considered knowing and voluntary. These rights include the right to a jury trial, the right to confront witnesses, and the right against self-incrimination. Id. These rights cannot be validly waived without an intentional relinquishment, which cannot be presumed from a silent record. Id. To ensure guilty pleas are entered "knowingly and intelligently," Boykin instructs the trial court to discuss with the accused the consequences of the decision. 395 U.S. at 244, 89 S. Ct. at 1712.

When there is no adequate transcript to establish that a guilty plea complies with Boykin, the burden is on the state to prove the plea was entered voluntarily, understandingly, and knowingly. Chamberlain v. State, 815 S.W.2d 534, 540-41 (Tenn. Crim. App. 1990). While the State is not entitled to a presumption to satisfy this burden, it may present extrinsic evidence such as the

testimony of trial counsel. Id. at 541. The state must establish that the appellant was made aware of his constitutional rights or that the appellant was independently aware of those rights. Johnson v. State, 834 S.W.2d 922, 925 (Tenn. 1992).

In the instant case, the appellant's trial counsel testified he followed his usual practice in advising the appellant of his constitutional rights. The attorney also indicated the trial court complied with its standard procedure by questioning the appellant regarding his understanding of his constitutional rights. The appellant further testified that he was aware of his right to a jury trial, right to present witnesses on his behalf, and right not to testify. The appellant's educational background included two years of college. According to trial counsel, the appellant understood his constitutional rights. Further, the record reflects that the document entitled "Plea of Guilty and Waivers of Jury Trial and of Appeal," which the appellant signed, specifically stated,

> I am pleading guilty to the offense or offenses to which I am charged. I understand that I could continue with a not guilty plea to any offense charged and that I have a right to a speedy and public trial by jury. I understand I have the right to be represented by an attorney in all stages of the proceedings against me and if I cannot afford an attorney, an appointed attorney would represent me without any cost to me. I understand that if I went to trial I or my attorney would have the right to question and cross-examine any witnesses that testified against me, that I could subpoena witnesses to testify for me and that I could not be forced to testify at trial and incriminate myself. I also understand that I have the right to have a jury impose any fine in excess of $50.00. I understand that by pleading guilty I give up or waive my right to a jury trial and all the above rights. I also understand that I am giving up my right to an appeal on all matters except those to be decided by the Court.

The appellant's testimony at the post-conviction hearing revealed he observed this language when he reviewed the document before signing it, and that his review of the document was sufficient to allow him to spot an error on the second page and question other provisions of the plea agreement. Further, it can be reasonably inferred from his testimony that he had no questions about the constitutional rights set forth in the document.

The appellant maintains the trial court erred in considering the fact that the appellant attended two years of college in determining the appellant's plea was made voluntarily and knowingly. However, we conclude relative intelligence and educational background are proper factors to consider in determining whether a plea was knowingly and voluntarily entered. See Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

This issue is very much dependent upon the respective credibility of the appellant versus that of his trial counsel. The post-conviction court found the state met its burden of proof in showing the appellant knowingly and voluntarily entered the guilty plea, thus implicitly accrediting the testimony of trial counsel. We conclude the post-conviction court did not err in making this determination.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

The appellant also argues the trial court erred in finding trial counsel afforded him effective representation in entering his guilty plea.  More specifically, he contends trial counsel did not adequately investigate his case or prepare for trial, thus forcing him to enter the plea.  This issue also lacks merit.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution.  State v. Melson, 772 S .W.2d 417, 419 n.2 (Tenn. 1989).  When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently, and, but for counsel's errors, petitioner would not have pled guilty but would have, instead, insisted upon going to trial.  Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle petitioner to relief.  Tenn. Code Ann. § 40-30-210(f).  This court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings.  Fields, 40 S.W.3d at 456 -57.

Trial counsel testified he reviewed discovery, was familiar with the statements of the co-defendants, and reviewed the appellant's videotaped confession with the appellant.  He stated he interviewed the state's witnesses and reviewed the state's proof from the preliminary hearing.  He and the appellant also interviewed co-defendant Freddie Myers concerning his potential testimony.  Further, trial counsel stated he and the appellant repeatedly discussed the proof and whether the appellant should accept the state's plea offer.  The appellant's testimony indicated his trial counsel reviewed his videotaped confession with him, met with him and Myers to discuss Myers' potential testimony, and informed him of the potential testimony of a witness who saw the appellant driving the van just prior to the crime.

Moreover, the appellant presented no proof at the post-conviction hearing to show trial counsel failed to discover exculpatory evidence, or that the appellant was unaware of exculpatory evidence when he pled guilty.  Although he complains trial counsel failed to interview William Ramsey, Ramsey's testimony at the hearing established Ramsey was represented by counsel at the time trial counsel was preparing for the appellant's trial and Ramsey could not have been compelled to testify for the appellant.  Therefore, not only does the record support the post-conviction court's conclusion that trial counsel afforded the appellant with effective representation, but the appellant failed to establish that counsel's alleged deficient performance impacted his decision to plead guilty.  The trial court did not err in determining that the appellant failed to meet his burden of proving ineffective assistance of counsel.

## CONCLUSION

The post-conviction court did not err in finding the appellant entered his guilty plea knowingly and voluntarily, and in concluding trial counsel's performance fell within the range of competence demanded of attorneys in criminal cases. We affirm the judgment of the post-conviction court.

_____

JERRY L. SMITH, JUDGE