IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 25, 2012

# JOSHUA JAMEEL BOND v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-498     Mark J. Fishburn, Judge**

**No. M2011-02223-CCA-R3-PC - Filed August 31, 2012**

Petitioner, Joshua Jameel Bond, filed this petition for post-conviction relief challenging his 2009 guilty-pleaded conviction for second degree murder, which was amended from first degree murder. Petitioner agreed to an out-of-range sentence of forty years. As grounds for relief, petitioner argues that trial counsel was ineffective for failing to investigate certain witnesses and evidence and that he was unaware of the nature and consequences of his guilty plea. The post-conviction court conducted an evidentiary hearing and denied relief. Our review of the record and the parties' briefs reveals no error; thus, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Joshua L. Brand, Nashville, Tennessee, for the appellant, Joshua Jameel Bond.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts

### A. Facts from Guilty Plea Hearing

On September 27, 2007, a Davidson County grand jury indicted petitioner for one count of premeditated first degree murder. Petitioner entered a guilty plea to second degree murder on June 5, 2009, during which the State made the following offer of proof:

[T]he State's proof would be that on September 27, 2007, the defendant entered the market at 1497 County Hospital Road here in Nashville, Davidson County, which was owned by Mr. Gene Kim. He entered with another person at approximately 8 o'clock and attempted to steal items from the store. He was caught by Mr. Kim. There was a confrontation between Mr. Kim and the defendant. The defendant left the store, returned about an hour later[,] and entered the store and shot Mr. Kim once, killing him instantly. The defendant was identified primarily through the surveillance video that was obtained by officers of the Metropolitan Police Department after 9-1-1- was called. A subsequent investigation [led] to the fact that the defendant was in fact the person who had pulled the trigger on the fatal shot.

The entire transcript of the plea colloquy was admitted into evidence at the evidentiary hearing, but the portions most relevant to our analysis on appeal are as follows:

THE COURT: Mr. Bond, I need to explain something to you; as I've indicated previously, if you were convicted of first degree murder, you would receive a life sentence without - life sentence with parole means that you would have to serve 51 years before you would be eligible for release; do you understand that?

[PETITIONER]: Yes, sir.

THE COURT: Also under that law in Tennessee, if you're convicted of second degree murder, whatever sentence you would [have] received would be imposed at 100 percent. You would have to serve 85 percent of the sentence, you'd get some jail credit, but a maximum of 15 percent jail credits before - towards parole eligibility, in other words, you'd

-2-

have to serve 85 percent of the sentence before you would be eligible for parole, do you understand that?[1]

[PETITIONER]:    Yes, sir.

THE COURT:    Also, under our sentencing laws, where you fall within the range of punishment, which for second degree murder is 15 to 60 years, where you fall within that range of punishment is dictated by the number of prior felony convictions that you have, do you understand that?

[PETITIONER]:    Yes, sir.

THE COURT:    [Y]ou'd be convicted as a range one offender, do you understand that?

[PETITIONER]:    Yes, sir.

THE COURT:    If you went to trial and if convicted of second degree murder, as a range one offender, the possible punishment that the Court could impose at the sentencing hearing would be between 15 and 25 years, do you understand that?

[PETITIONER]:    Yes, sir.

THE COURT:    That would be served at a hundred percent, but that would be your range of punishment, between 15 and 25 years, do you understand that?

[PETITIONER]:    Yes, sir.

THE COURT:    Range two punishment for second degree murder is from 25 to 40 years, and range three is from 40 to 60 years; the sentence that you're accepting is a 40-year sentence,

---

[1] Petitioner would not actually be on parole but would have a "flattened" sentence, i.e., he would serve 100% of his sentence less sentence credits earned and retained, but in any event, he would serve not less than 85% of his total sentence. Tenn. Code Ann.§ 40-35-501(i)(1) (2010).

which could be either range two or three, do you understand that?

[PETITIONER]: Yes, sir.

THE COURT: *Do you understand that that is clearly a much greater punishment than I could impose on you if you went to trial and were found guilty of second degree murder?*

[PETITIONER]: Yes, sir.

THE COURT: Okay. However, it is of course less than the sentence for first degree murder, but you understand that the sentence you're agreeing to and accepting is a much greater sentence than I could impose if you went to trial and were found guilty of second degree murder, do you understand that?

[PETITIONER]: Yes, sir.

THE COURT: And with that understanding, are you going to agree to waive your range of punishment and accept that greater - greater sentence than I could otherwise impose?

[PETITIONER]: *Yes, sir.*

(emphasis added).

## B. Procedural History

Petitioner filed a pro se petition for relief from conviction or sentence on November 6, 2009. The post-conviction court appointed counsel, who filed an amended petition on March 3, 2010. Counsel moved to withdraw, and the court appointed replacement counsel, who filed a final amended petition on August 6, 2010. In his final amended petition, petitioner claimed that he received ineffective assistance of counsel due to trial counsel's failure to investigate certain witnesses and evidence and that he was not fully informed of the nature and consequences of the plea bargain.

The post-conviction court conducted an evidentiary hearing on November 10, 2010. Petitioner testified on his own behalf, and the State presented trial counsel as a witness. The

post-conviction court issued an order denying relief on October 3, 2011. A timely notice of appeal followed.

### C. Facts from Post-Conviction Hearing

At the evidentiary hearing, petitioner testified that he was represented at trial by an assistant district public defender (hereinafter referred to as "trial counsel"). He testified that trial counsel received discovery from the State, provided him with a copy, and reviewed the material with him. Trial counsel visited him in the jail and spoke with him about witnesses and evidence the State intended to use at trial. Petitioner was aware of the store surveillance tape the State intended to use as evidence at his trial, and he knew the tape showed him shooting the victim in the head. Trial counsel also discussed possible defenses with him. Petitioner believed trial counsel visited him "at least maybe 10 to 15" times.

During their discussions, petitioner told trial counsel that he wanted her to call Larry Day as a witness, but she informed petitioner that Mr. Day would not be beneficial as a witness. Petitioner believed that trial counsel spoke with Mr. Day before making that determination.

During the pendency of his case, petitioner believed he would proceed to trial. Trial counsel did not inform him of a plea offer until days before the trial. Petitioner was charged with first degree murder and faced at least fifty-one years before he would be eligible for release. The State offered to allow him to plead guilty to the lesser charge of second degree murder with a sentence of forty years. Petitioner testified that trial counsel advised him that he was likely to be convicted of first degree murder and that a forty-year sentence was probably the best alternative. He testified that trial counsel failed to explain to him that if he were convicted by a jury of second degree murder, his sentence would have been fifteen to twenty-five years as a Range I offender. He stated that trial counsel first presented him with the plea agreement on the Friday preceding his Monday trial date and that she did not review the agreement with him. He further testified that because the court proceedings were hurried, he did not have time to read the plea agreement. He said that trial counsel told him to just say, "Yes, sir," when they approached the bench to enter the plea. Petitioner testified that he signed the agreement because he "was aware of . . . the years," but he claimed at the evidentiary hearing that he "was not aware of the range of punishment." He maintained that had he known about the range of punishment for second degree murder, he would have gone to trial and not entered a guilty plea.

On cross-examination, petitioner testified that Larry Day was a friend from his neighborhood. He did not know what Mr. Day's testimony would have been but thought Mr. Day would testify as a character witness. He admitted that a surveillance camera captured

the shooting and that no fact witnesses could help his case. He also admitted that his former girlfriend was prepared to testify against him regarding his premeditation and motive for the murder.

Petitioner acknowledged that trial counsel informed him that the plea agreement entailed a forty-year sentence with a possible fifteen percent "good and honor credit." He stated that he did not understand the plea colloquy and that he only answered "yes" because his attorney instructed him to do so. However, petitioner testified that he wanted to accept the plea in court because the State offered "a better deal" than the possible fifty-one calendar year sentence for first degree murder. He has since changed his mind because he had an opportunity to read the plea agreement.

Trial counsel testified that at the time of the evidentiary hearing, she had practiced criminal law for thirteen years. She testified that she communicated the State's plea offer to petitioner the day she received it. She recalled that she received the offer approximately one and a half weeks prior to trial. The State had previously indicated it would not make an offer because of the strength of the proof against petitioner. However, after speaking with family members of the victim, the State extended an offer of second degree murder with a forty-year sentence. Trial counsel urged the State to consider a sentence of thirty-two years but did not inform petitioner of her efforts because she did not want him to become hopeful.

Trial counsel explained that Larry Day was the other individual captured on the videotape of the crime and that his testimony would have been "very detrimental" to petitioner. The State had not located Mr. Day at the time of trial. If trial counsel had presented him as a witness, the State would have cross-examined him about petitioner's premeditation.

Trial counsel testified that she did not personally review the aspect of the plea agreement where he would be pleading out-of-range with petitioner but that another assistant public defender who was assisting her did so. She further believed that the likelihood petitioner would be convicted of first degree murder was ninety-nine percent. Trial counsel said petitioner was confused about her instruction to him to say, "Yes, sir." She clarified that she always advised clients to be respectful and answer, "Yes, sir," and "No, sir," but that she did not advise him to lie to the court. Trial counsel said petitioner did not initially want to accept a plea offer and wanted to proceed to trial. However, he received pressure from his family and changed his mind on the Thursday prior to the Monday trial. Trial counsel testified that the section of the plea agreement stating petitioner waived the range of punishment was not in her handwriting and was not on the form when she reviewed it with petitioner. She said that it might have been added after the plea was entered.

On cross-examination, trial counsel stated that petitioner and her assistant did not have a good working relationship. Friction existed between the two of them. She attributed it to the fact that her assistant was very blunt with petitioner about his decision to go to trial and confronted him with the realities of his case.

## II. Analysis

### A. Ineffective Assistance of Counsel

#### 1. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane*, 316 S.W.3d at 562 (quoting *Grindstaff*, 297 S.W.3d at 216).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Questions regarding the credibility of witnesses are matters entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact carry the weight of a jury verdict and are conclusive on appeal unless the preponderance of the evidence is otherwise. *Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Rigger*, 341 S.W.3d at 307 (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Dellinger*, 279 S.W.3d at 294 (citing *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007)).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975)). The constitutional right to counsel attaches when adversarial judicial proceedings are

initiated against the defendant. *State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn. 1980). "Initiation" is construed as issuance of an arrest warrant, the time of the preliminary hearing in cases where an arrest warrant is not first issued, or by indictment or presentment issued by a grand jury. *Id.* at 286.

To prevail on his claim of ineffective assistance of counsel, petitioner must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Finch*, 226 S.W.3d at 315; *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter*, 523 S.W.2d at 936)). To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Strickland*, 466 U.S. at 688). As our supreme court has previously held:

> '[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.'

*Baxter*, 523 S.W.2d at 934-35 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689); s*ee Finch*, 226 S.W.3d at 316.

To establish that petitioner suffered prejudice as a result of counsel's deficient performance, petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch*, 226 S.W.3d at 316 (quoting *Vaughn*, 202 S.W.3d at 116). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 694); s*ee Finch*, 226 S.W.3d at 316. As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694; *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner must establish both deficient performance and prejudice therefrom to be entitled to post-conviction relief. *Vaughn*, 202 S.W.3d at 116; *Howell*, 185 S.W.3d at 326. It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

## 2. Failure to Investigate

In his brief to this court, petitioner argues that he was denied effective assistance of counsel because trial counsel "refused to investigate certain evidence or call a certain witness requested by [petitioner]." He argues that trial counsel failed to review evidence, specifically, the convenience store surveillance tape. He contends that the tape would have suggested the presence of a weapon located near the victim and that failure to review it foreclosed the possibility of any affirmative defenses. Petitioner presented no evidence at the evidentiary hearing in support of this specific claim. Petitioner offered no testimony on this issue, and trial counsel was not questioned with regard to it. To the contrary, petitioner testified that he was aware of the videotape the State intended to use as evidence and knew it showed him shooting the victim in the head. During his testimony regarding the videotape, petitioner did not mention a weapon in the footage. Thus, this issue is deemed waived on appeal. *See Brimmer v. State*, 29 S.W.3d 497, 530 (Tenn. Crim. App. 1998) (finding that issues are waived in post-conviction proceedings because of a failure to present proof; when no evidence is presented at the post-conviction hearing concerning allegations, we cannot speculate as to the substance of the claims).

Petitioner also claims that trial counsel rendered ineffective assistance of counsel by failing to call a certain witness. In his brief, petitioner did not name the witness whom trial counsel should have called nor did he demonstrate the importance of the witness's testimony. We must infer that petitioner's brief refers to trial counsel's failure to call Larry Day as a witness.

First, trial counsel testified that she interviewed Mr. Day and found him to be an unfavorable witness. The State had been unable to locate Mr. Day prior to the date set for trial. If trial counsel had called him as a witness, the State would have been able to question him extensively and develop evidence of petitioner's premeditation. Trial counsel investigated the witness and made the informed decision that his testimony would be detrimental. Second, there was no trial; petitioner entered a guilty plea. Therefore, the argument that trial counsel failed to call a particular witness is moot.

Finally, case law is clear that to establish a claim of ineffective assistance of counsel for failure to call a witness at trial, a petitioner should present said witness at the post-conviction hearing. *Plyant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). "As a general rule, this is the only

-9-

way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* (quoting *Black*, 794 S.W.2d at 757). Petitioner failed to call Mr. Day as a witness at the evidentiary hearing. For the above reasons, petitioner is not entitled to relief on this issue.

## B. Voluntariness of the Guilty Plea

Petitioner claims that trial counsel did not fully inform him of the nature and consequences of the plea agreement and that he did not understand the ranges of punishment. In effect, petitioner claims that his guilty plea was not knowingly, voluntarily, or intelligently made.

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id*. Courts should consider the following factors when ascertaining the validity of a guilty plea: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id*. (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A)     The nature of the charge to which the plea is offered;

(B)     the maximum possible penalty and any mandatory minimum penalty;

(C)     if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;

(D)     the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E)     the right to a jury trial;

(F)     the right to confront and cross-examine adverse witnesses;

(G)     the right to be protected from compelled self incrimination;

(H)     if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)     if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)     if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions. *Lane*, 315 S.W.3d at 564 (citing *Howell*, 185 S.W.3d at 331).

At the evidentiary hearing, post-conviction counsel questioned petitioner and trial counsel in detail about the guilty plea proceedings. Petitioner testified that he did not understand he would be entering a plea outside of his range of punishment and that trial counsel did not explain that the sentence was greater than the sentence that could be imposed if the jury convicted him of second degree murder. He claimed that had he been aware of these facts, he would have proceeded to trial. Trial counsel testified that she did not explain the details of the plea agreement to petitioner but her assistant, another assistant district public defender, did so. The transcript of the plea colloquy, introduced as an exhibit at the evidentiary hearing, confirms that the trial court strictly followed the mandates of Rule 11 of the Tennessee Rules of Criminal Procedure and applicable state and federal law. After a full evidentiary hearing, the post-conviction court found that petitioner's guilty plea was knowingly, voluntarily, and intelligently entered.

In denying relief, the post-conviction court relied on the transcript of the plea colloquy. It also implicitly found that petitioner's testimony at the hearing was not credible. The court heard conflicting testimony from trial counsel and petitioner on this issue and credited trial counsel's testimony. "The trial court is the best source to determine the demeanor, credibility of witnesses, and the nuances of the evidentiary hearing." *State v. Taylor*, 968 S.W.2d 900, 905 n.3 (Tenn. Crim. App. 1997). Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing that he understood the range of punishment and that he understood he was pleading outside of the applicable range. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing over his testimony at the post-conviction hearing.

The evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of "Buyer's Remorse," in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002). We find that petitioner's guilty plea was knowingly, voluntarily, and intelligently entered. This issue is without merit.

## CONCLUSION

Based upon our review of the parties' briefs and the record as a whole, we discern no error and affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE