IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on briefs November 22, 2000

## DARRICK EDWARDS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 222981    Douglas A. Meyer, Judge**

**No. E1999-01204-CCA-R3-PC**
**January 9, 2001**

The petitioner, Darrick Edwards, appeals the trial court's denial of his petition for post-conviction relief. Because the petitioner was provided the effective assistance of counsel and knowingly and voluntarily entered his pleas of guilt to first degree murder, conspiracy to commit first degree murder, aggravated robbery, and conspiracy to commit aggravated robbery, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Charles P. Dupree, Chattanooga, Tennessee, for the appellant, Darrick Edwards.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Rodney Strong, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 5, 1997, the petitioner accepted a plea offer made by the state. Upon his entering pleas of guilt to first degree murder, conspiracy to commit first degree murder, aggravated robbery, and conspiracy to commit aggravated robbery, the trial court imposed sentences as follows:

| | Offense | Sentence |
|---|---|---|
| (1) | First degree murder | Life with the possibility of parole |
| (2) | Conspiracy to commit first degree murder | Range III, 40 years (consecutive to life sentence) |
| (3) | Aggravated robbery | Range III, 30 years (consecutive to life sentence but concurrent with 40-year sentence) |

| Offense | Sentence |
| --- | --- |
| (4)  Conspiracy to commit aggravated robbery | Range III, 15 years (consecutive to life sentence but concurrent with 40- and 30- year sentences) |

The effective sentence imposed upon the petitioner was for a term of life imprisonment plus 40 years at Range III (45% release eligibility).

The stipulated proof announced by the state at the submission hearing was as follows:

> On September 25, 1996, this defendant along with codefendant, LaTonya Townsend robbed and murdered Sidney Pike. [The] proof would show that they knew Mr. Pike because he sold insurance in their neighborhood [and] would further show that Mr. Edwards in particular had an insurance policy with Mr. Pike; that Mr. Pike was called to an appointment at 1601 Dodds Avenue, which was the codefendant's cousin's house; that he was invited, lured inside that apartment; that there he was beaten and bludgeoned to death with a tire iron.
>
> Thereafter, the codefendants moved the body from the location at 1601 Dodds Avenue to a location at 800 South Watkins by putting the body in an automobile belonging to the victim and driving to that location.  Proof would further show that the defendant and codefendant took $1900 in cash from Mr. Pike; took his personal belongings; took the weapons, murder weapons that they had utilized, and hid all these items in a location behind this defendant's brother's apartment at 2711 East Main Street.
>
> The proof would further show that the defendants then made arrangements to secure a bus ticket to Enterprise, Alabama, where this defendant secured a hotel room.  Before they left for Enterprise, much of the proceeds of this robbery were spent at several different stores in local areas and at a local mall here in Hamilton County, buying shoes and other clothing items.
>
> Upon his apprehension in Alabama, Mr. Edwards gave a complete confession to the Chattanooga Police Department detectives on the 29th of September, 1996.

On September 14, 1998, the petitioner filed a petition for post-conviction relief alleging, among other things, that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered.  The petitioner claimed that his trial counsel failed to adequately

communicate during the course of his representation and ultimately "manipulated" his acceptance of the plea agreement. In particular, the petitioner contended that his family members were influenced by trial counsel to recommend acceptance of the plea offer in order to avoid a possible death penalty. He also complained that his trial counsel had failed to adequately investigate the charges and had failed to secure the presence of alibi witnesses.

At the evidentiary hearing on the petition for post-conviction relief, the petitioner, 19 years of age at the time of his plea, testified that he had only a ninth grade education, could only partially read and write, and did not fully understand the ramifications of his guilty plea. He claimed that he believed that he had received concurrent sentences of 45 years, 30 years, and 15 years with a 45% release eligibility. He asserted that it was not until he was in prison that he learned that he also had a sentence of life with the possibility of parole. The petitioner explained that he could serve his sentences in 20 to 30 years under the agreement as he originally understood it, but that under the actual agreement, it would take as many as 74 years to complete his term.

On cross-examination, the petitioner acknowledged that he had signed a waiver of rights and confessed to the crimes. He agreed that the content of his confession to the police was truthful. The petitioner testified that he was aware that there was a possibility that the state might file notice of an intention to seek the death penalty. While he recalled having met with his trial counsel "several times" throughout the course of his representation, he conceded that he had no alibi defense. In response to questioning by the assistant district attorney general, the petitioner further testified as follows:

> Q. So actually, [trial counsel] was able to get the State to reduce their discussion of the death penalty and actually allow you to plead to a sentence to where you might get parole rather than life without parole, is that correct?
>
> A. Yes, sir.
>
> Q. So obviously [trial counsel] did a very good job for you keeping you out of the electric chair to begin with, is that right?
>
> A. Yes, sir.
>
> Q. And keeping you out of prison for the rest of your life on life without parole, isn't that correct?
>
> A. Yes, sir.
>
> Q. So [trial counsel] obviously did a very good job for you, didn't he?

A.    Yes, sir.

Q.    And, in fact, before you entered your plea, he did go over with you what the plea agreement was going to be, is that correct? Did he come talk to you, say, This is what the state is offering you, take a life sentence plus 40 years as your sentence? Did he not come talk to you about that?

A.    Yes, sir.

Q.    So you understood that that was what the plea was going to be, is that correct?

A.    Not really.

Further, the petitioner acknowledged that he had two weeks to think about the plea offer and that he discussed the proposal with members of his family before announcing his consent. He stated that he accepted the plea agreement because his mother "told [him] go ahead and take it."

Trial counsel, who had extensive experience in the criminal practice, was a witness for the state. He recalled having discussions with the petitioner on the possible defenses, one contesting the admissibility of the confession and the other offering proof of diminished capacity or responsibility due to the influence of drugs or alcohol. Trial counsel testified that he had calculated a life sentence at 51 years and fully advised the petitioner of that as well as the other sentences that had been proposed. He stated that he had worked to prevent the filing of a death penalty notice and had prepared a document that the petitioner ultimately approved, which indicated the actual length of the proposed sentence. He specifically recalled informing the petitioner that he could be "92 to 94 years of age" if he survived long enough to be released from prison. Trial counsel stated that, in his opinion, the petitioner had entered knowing and voluntary pleas. He testified that the petitioner discussed the plea agreement with his mother before indicating his final approval and entering the pleas of guilt. The proof also established that just prior to his guilty pleas in this state, the petitioner had pled guilty to robbery and breaking and entering for crimes that he had committed in Alabama shortly after the murder.

The transcript of the submission hearing also established that the petitioner had been counseled by his attorney before entering his pleas:

So I've explained to him, Judge, that though the state is allowing him to plead to a life with possibility of parole, that for all intents and purposes . . . this young man will serve the rest of his life in the state penitentiary for this offense.

The transcript also demonstrated that the trial judge, who accepted the guilty pleas, explained to the petitioner that life with the possibility of parole was tantamount to 60 years at 85% release eligibility or a total of 51 years and that a sentence of 40 years with a 45% service requirement added an additional 18 years.

At the conclusion of the evidentiary hearing, the post-conviction court denied relief. In an accompanying memorandum, the court concluded that trial counsel had adequately communicated with the petitioner and that there were no alibi witnesses for trial counsel to have interviewed or summoned to trial. The court also determined that trial counsel had not pressured the petitioner to enter the pleas and that they were knowingly and voluntarily entered.

Under the terms of the Post-Conviction Procedure Act, a petitioner bears the burden of proving the allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The credibility of the witnesses and the weight and value afforded to their testimony are appropriately addressed in the trial court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). On appeal, the burden is on the petitioner to establish that the evidence preponderated against the findings of the trial judge. Clenny v. State, 576 S.W.2d 12 (Tenn. Crim. App. 1978). Otherwise, the findings of fact by the trial court are conclusive. Graves v. State, 512 S.W.2d 603 (Tenn. Crim. App. 1973).

In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court ruled that defendants should be advised of certain of their constitutional rights before entering pleas of guilt. Included among those required warnings are the right against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Id. at 243. The overriding Boykin requirement is that the guilty plea must be knowingly and voluntarily made. Id. at 242. If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

In order for the petitioner to be granted relief on grounds of ineffective counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This two-part standard, as it applies to guilty pleas, is met when the petitioner establishes that, but for his counsel's errors, he would not have pled guilty and would have insisted on a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

A review of this record establishes that the petitioner clearly received the effective assistance of counsel. On cross-examination by the state, the petitioner actually complimented his lawyer for the quality of the services provided. Moreover, the proof was overwhelming that the petitioner entered knowing and voluntary pleas of guilt, fully aware of his various alternatives. This court fully

concurs with the detailed memorandum entered by the post-conviction court on each of the issues presented.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE