IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2012 Session

## JONATHAN LAWRENCE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**Nos. 2008-D-3487, 2008-D-3507      Steve R. Dozier, Judge**

---

**No. M2010-02548-CCA-R3-PC - Filed May 30, 2012**

---

The Petitioner, Jonathan Lawrence, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions of two counts of especially aggravated kidnapping, one count of aggravated kidnapping, three counts of aggravated robbery, and resulting effective sentence of twenty-five years in confinement. On appeal, the Petitioner contends that he did not plead guilty knowingly, intelligently, and voluntarily. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and ROGER A. PAGE, JJ., joined.

Brian T. Jackson, Nashville, Tennessee, for appellant, Jonathan Lawrence.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The record reflects that in October 2008, the Davidson County Grand Jury indicted the Petitioner and his co-defendant for two counts of especially aggravated kidnapping and two counts of aggravated robbery in case number 2008-D-3487 and for one count each of aggravated kidnapping, aggravated robbery, aggravated burglary, Class D felony theft, and

misdemeanor theft in case number 2008-D-3507. On August 10, 2009, the Petitioner pled guilty as charged in case number 2008-D-3487 and pled guilty to aggravated kidnapping and aggravated robbery in case number 2008-D-3507. Pursuant to the plea agreement, the Petitioner received an effective sentence of twenty-five years to be served at one hundred percent.

At the defendants' joint guilty plea hearing, the State gave the following factual account of the crimes in case number 2008-D-3507: On the afternoon of June 12, 2008, Charles Caudell walked outside to his truck in order to look for his cellular telephone. Two African-American men approached him and displayed a weapon. The man with the gun demanded Caudell's wallet and ordered him to get onto the ground. The men searched Caudell's truck and told him to take them to his apartment. While one man held Caudell at gunpoint in the living room, the second man ransacked the apartment. They took a backpack, an Xbox 360, a Sony PlayStation 2, video games, and a handgun. Later, the police showed Caudell a photograph array containing the defendants' photographs. Caudell identified the Petitioner's co-defendant as one of the robbers; he did not identify the Petitioner at that time. However, at the co-defendant's preliminary hearing, Caudell saw the Petitioner in the courtroom and identified him as the second robber.

In case number 2008-D-3507, the State informed the trial court that in the early morning hours of June 16, 2008, Michael Ezekiel drove to his girlfriend's apartment. When he arrived and got out of his car, the Petitioner approached him, pointed a gun, and demanded Ezekiel's property. Ezekiel got onto his knees and gave his wallet, cellular telephone, and car keys to the Petitioner. The Petitioner's co-defendant arrived, and the defendants demanded four hundred dollars. Ezekiel drove the defendants to an automated teller machine (ATM). Ezekiel could not get any money out of the ATM, so the defendants forced him to drive back to his girlfriend's apartment. The three men knocked on the door, and Ezekiel's girlfriend answered. The defendants took her laptop, cellular telephone, ex-husband's wedding ring, camera, and other personal items. The Petitioner gave the gun he was holding to his co-defendant. While the Petitioner's co-defendant stayed at the apartment with Ezekiel's girlfriend, Ezekiel drove the Petitioner to another ATM in order for Ezekiel to use his girlfriend's ATM card. Ezekiel tried to get money out of the ATM but was unsuccessful. When he returned to his car, he realized that the Petitioner no longer had the gun and hit the Petitioner repeatedly in the face. Ezekiel fled and flagged down a police officer. Meanwhile, the Petitioner drove Ezekiel's car back to Ezekiel's girlfriend's apartment. The police arrived and arrested the Petitioner. The Petitioner's co-defendant had raped Ezekiel's girlfriend repeatedly while Ezekiel and the Petitioner were away from the apartment.[1]

_____

[1]The Petitioner's co-defendant was indicted in case number 2008-D-3487 for four counts of
(continued...)

The Petitioner filed a timely petition for post-conviction relief, claiming that his guilty pleas were coerced and involuntary because he did not understand the nature and consequences of his pleas. The post-conviction court appointed counsel and held an evidentiary hearing. At the hearing, the Petitioner testified that he was arrested on June 16, 2008, and was unable to make bond. He met with trial counsel for the first time about one week later. The Petitioner received discovery in the mail, but counsel never went over the details of the discovery materials with him. The Petitioner met with counsel two or three times, but they did not discuss the charges, potential punishments, or witnesses. They also did not discuss the Petitioner's pleading guilty or waiving his right to a direct appeal. The Petitioner said counsel claimed that the Petitioner would be "all right" and that most of the State's evidence was against the Petitioner's co-defendant. However, one or two days before trial, counsel told the Petitioner that the Petitioner had no defense and that counsel could not do anything for him. The Petitioner said counsel coerced him to plead guilty by telling him that the jury was going to convict him, that the trial court was going to "stack" the sentences, and that he was never going to get out of prison. Counsel discussed a plea offer with the Petitioner but did not explain the difference between a direct appeal after a jury trial and a petition for post-conviction relief. The Petitioner said counsel "had me believing" that the Petitioner could come back to court within one year and have a trial.

On cross-examination, the Petitioner testified that he did not remember the trial court specifically saying at the plea hearing that the guilty plea would preclude him from going to trial. However, he said he remembered the trial court saying "something of that nature." He acknowledged that the trial court asked him questions during the plea hearing and that he told the court no one was forcing him to plead guilty. However, he explained that "my attorney told me . . . not to make things bad on myself so to come in and agree and get my deal because otherwise the deal would be taken off the table and I'd be forced to go to trial. And he told me that . . . ultimately I [would] lose." He said he pled guilty because he was afraid and "new to this." He acknowledged that the trial court informed him that he was facing a sentence of seventy-four years if convicted and that fifty years would be served at one hundred percent. He acknowledged that after receiving that information, he wanted to plead guilty. He also acknowledged that he heard the State's recitation of the facts during the plea hearing, that he participated in the robberies, and that his co-defendant's rape charges would have hurt his case.

The Petitioner's trial attorney testified that he had been licensed to practice law since 2005 and that at least ninety-five percent of his practice involved criminal law. He was appointed to represent the Petitioner and spoke with the Petitioner multiple times over the

[1](...continued)
aggravated rape and one count of attempted aggravated rape.

telephone. Counsel said that his time sheet showed he also met with the Petitioner seven times in person and that "if I had my full record it would probably be double that." Counsel went over the charges with the Petitioner, and they discussed the physical evidence and the theory of criminal responsibility. Counsel said that the Petitioner wanted counsel to argue impossibility and that they discussed that defense "quite extensively." Counsel talked with the Petitioner about why the defendants were going to be tried jointly. Counsel said he told the Petitioner that the facts against the Petitioner's co-defendant would "reflect poorly" on the Petitioner at trial. In 2009, the State made a plea offer. Counsel said that he and the Petitioner discussed the plea "in a . . . totally piece by piece manner because [the Petitioner] had a little bit of difficulty understanding why he could still be charged with the things he was charged with." Counsel told the Petitioner that the Petitioner could go to trial and appeal if convicted.

Trial counsel testified that on the morning of August 10, 2009, he was prepared for trial, and people were waiting in the hallway for jury selection. However, the Petitioner decided to plead guilty. The Petitioner asked counsel about an appeal. Counsel said that he told the Petitioner there would be no appeal upon a guilty plea and that the Petitioner asked him, "[W]ell, is there anything I can do after that[?]" Counsel said he told the Petitioner that the Petitioner could file a petition for post-conviction relief "if you find something that I've done wrong or something was incorrectly done you can file a post[-]conviction on that." He said he never told the Petitioner that the Petitioner could have a trial within one year. Counsel thought the Petitioner understood what the Petitioner was doing when the Petitioner pled guilty. Counsel said that he did not pressure the Petitioner to accept the State's offer, that it was the Petitioner's choice, and that counsel "took great pains in making sure he understood everything that was going on because of the seriousness of these charges and the charges of his co-defendant." He said he would not have allowed the Petitioner to plead guilty if he had thought the Petitioner's guilty pleas were unknowing and involuntary.

On cross-examination, trial counsel testified that he filed seven or eight pretrial motions. He said he considered filing a motion to sever but that he did not think it was the "right thing to do." He denied visiting the Petitioner only twice in jail and said he discussed discovery with the Petitioner every time they met.

In a written order, the post-conviction court stated that it had reviewed the guilty plea hearing transcript and that the trial court asked the Petitioner during the hearing if he understood pleading guilty would mean he would not have a trial. The post-conviction court noted that the Petitioner responded affirmatively. The post-conviction court also noted that the trial court explained the Petitioner's potential punishment if convicted and that trial court informed the Petitioner he would have to have "valid grounds" for a post-conviction petition. The post-conviction court specifically accredited trial counsel's testimony that he met with

the Petitioner multiple times, that he explained the charges to the Petitioner, and that he never told the Petitioner about having a trial within one year of pleading guilty. The post-conviction court stated that it did not find the Petitioner's testimony credible and concluded that he knowingly waived his right to a jury trial and understood the nature and consequences of his pleas. Therefore, the post-conviction court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner maintains that he did not plead guilty knowingly, intelligently, and voluntarily because trial counsel failed to explain the difference between a direct appeal and a petition for post-conviction relief. Therefore, the Petitioner thought that filing a petition for post-conviction relief would allow him to have a trial on the merits. The State argues that the post-conviction court properly denied the petition. We agree with the State.

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

When a defendant enters a guilty plea, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Turning to the instant case, the Petitioner contends that he did not understand the ramifications of his plea and that the following exchange during the plea hearing proves his claim:

> THE COURT: Did anyone promise you [anything in exchange for your pleas]?
>
> [The Petitioner]: Well, I was told that I could have a post-conviction within a year -- within the year –
>
> . . . .
>
> THE COURT: I -- who told you that?
>
> [Defense counsel]: I told him that he would have the option of -- if he had found something, that he could file a post-conviction --
>
> THE COURT: Okay.
>
> [Defense counsel]:  -- on that, Your Honor.
>
> THE COURT: That's true.  But let's deal with my first question first and then we'll deal with that.  But that's accurate about post-conviction.  There'd have to be some valid grounds

to grant a post-conviction, and that's what I'm asking you about today.

Is there any reason you don't wanna . . . enter this plea? Anything [defense counsel] hasn't done, should've done, you wanted him to do? I mean, are you wanting to enter this plea or not?

[The Petitioner]: Yes, sir.

We conclude that the post-conviction court properly denied the petition for post-conviction relief. The Petitioner did not ask if he could return to court within one year for a trial. Instead, he asked the trial court about a post-conviction petition. The trial court and trial counsel correctly informed him that he could file a petition for post-conviction relief within one year. Moreover, our review of the transcript shows that just prior to the above exchange, the trial court told the Petitioner that he had a right to a jury trial. The Petitioner asked the trial court, "[W]hen would that be?" The trial court answered, "Today. They're actually right outside." The trial court then informed the Petitioner that if a jury convicted him, he could appeal the conviction but that "[i]f you enter your plea here today, there would not be a trial, there would not be an appeal, and this would be your last day in court on these two cases." The trial court asked the Petitioner if he understood, and the Petitioner said yes. The post-conviction court did not find the Petitioner to be credible at the evidentiary hearing and specifically accredited trial counsel, who testified that he explained the plea offer to the Petitioner, that it was the Petitioner's choice to accept the offer, that the Petitioner understood what he was doing, and that counsel did not tell the Petitioner that the Petitioner could return to court within one year for a trial. As stated previously, the post-conviction court, not this court, resolves issues involving the credibility of the witnesses. Finally, the Petitioner acknowledged at the evidentiary hearing that he wanted to plead guilty after the trial court informed him about his possible punishment . Therefore, the post-conviction court properly concluded that the Petitioner pled guilty knowingly, intelligently, and voluntarily.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE