# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 24, 2014 Session

## CHARLES MIDDLEBROOK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 100668    Steven W. Sword, Judge**

---

**No. E2013-02411-CCA-R3-PC - Filed July 23, 2014**

---

The Petitioner, Charles Middlebrook, appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his 2011 convictions upon guilty pleas for theft valued more than $1000 but less than $10,000 and assault and his Range III eight-year sentence. The Petitioner contends that his guilty pleas were involuntarily entered because he received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Douglas A. Trant (on appeal) and J. Liddell Kirk (at post-conviction hearing), Knoxville, Tennessee, for the appellant, Charles Middlebrook.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Andrea A. Kline, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The record shows that at the guilty plea hearing on February 22, 2011, the Petitioner pleaded guilty to charges from two indictments. According to the State's recitation of the facts in case number 92833,

> [T]he . . . witnesses . . . were employees of Zip's Market on Kingston Pike[.] They would testify that Mr. Middlebrook and a codefendant who's currently absconded from the court came into . . . the market on March 26, 2009, and

they were both captured on surveillance video taking cartons of cigarettes, sticking them down their pants, and then leaving the store. They would testify that they did this on two separate occasions that day. They would testify the value of these cigarettes to be over $1,000 but less than $10,000.

Regarding case number 92999, the State's recitation of the facts show that on March 19, 2009, the Petitioner and his codefendant entered Walgreens and attempted to leave the store without paying for items. When confronted by the store clerk, the Petitioner and the clerk skirmished, and the clerk was injured. Pursuant to the plea agreement, the Petitioner pleaded guilty to theft and assault and received a Range III effective eight-year sentence with the manner of service to be determined by the trial court.

At the guilty plea hearing, the trial court reviewed with the Petitioner the charges against him and confirmed that he was pleading guilty to theft and assault without an agreement regarding the manner of service of his sentence. The court stated that the Petitioner faced possible punishment of eight to twelve years for theft and eleven months, twenty-nine days for assault. The Petitioner responded that he understood the possible sentences. The court asked if the Petitioner understood that by pleading guilty, he was stipulating that he intentionally and knowingly took items from Mr. Zip with the intent to deprive the owner of the items and that he committed a bodily assault on an individual. The Petitioner stated he understood. The court explained that pursuant to the plea agreement the Petitioner would receive an eight-year sentence, and the Petitioner responded that he understood. The court noted that although the Petitioner was requesting probation, it was the court's decision whether to grant probation. The Petitioner said he understood he might or might not receive probation. When given the opportunity to ask the court questions, the Petitioner said he did not have any questions. At the sentencing hearing, the trial court ordered the Petitioner to serve his sentence in confinement.

The Petitioner appealed the trial court's denial of alternative sentencing and its ordering him to serve his effective eight-year sentence in confinement. This court affirmed the trial court's denial of probation and concluded that the record supported the court's ordering the Petitioner to serve his sentence in confinement based on the Petitioner's lengthy criminal history and "repeated unwillingness to comply with a sentence involving release." *State v. Charles Middlebrook*, No. E2011-01034-CCA-R3-CD, slip op. 1 (Tenn. Crim. App. July 12, 2012), *perm. app. denied* (Tenn. Oct. 1, 2012). The Petitioner now seeks post-conviction relief.

The post-conviction petition alleged the Petitioner received the ineffective assistance of counsel. He alleged that his guilty pleas were involuntary and unknowing because he agreed to the eight-year sentence provided he received probation and that he was unaware

that manner of service was "unresolved within the plea agreement." He alleged that the signature on the plea agreement was not his and that he did not authorize anyone to sign his name. He asserted the guilty plea hearing occurred in March 2011, not February 2011 as noted by the transcript and the executed plea agreement. He claimed he would not have pleaded guilty had he known his receiving probation was not a condition of the plea agreement. He claimed counsel was ineffective by not thoroughly explaining the plea agreement that stated the trial court would determine the manner of service and by allowing the plea agreement to be filed without the Petitioner's signature.

At the post-conviction hearing, the Petitioner testified that he did not understand before pleading guilty that he would receive an effective eight-year sentence. He said he dropped out of school in the tenth grade and obtained a job. He said he worked as a cook at Riverside Tavern and several other places. He said he was physically disabled and unable to work due to back, shoulder, and leg problems.

The Petitioner testified that counsel discussed with him the facts of his case once. He said that although counsel negotiated a plea agreement, he wanted a trial. He said counsel advised against a jury trial because the plea offer included probation. He said he signed a plea agreement that included eight years' probation. He agreed counsel told him the sentence was eight years. He said that when he returned to court to receive probation, a different trial judge presided over his case. He said the judge "done away with the probation deal." He said that the court did not honor his plea agreement of probation and that "[t]hey threaded my plea agreements and made me a waiver of guilt." He denied signing the plea agreement that permitted the trial court to determine the manner of service and said his signature was "copied." He said that he would not have pleaded guilty had counsel told him that the court would decide if he received probation. He said he was released on parole before the post-conviction hearing and that he wanted the court to vacate the judgments and  hold a trial.

Upon examination by the trial court, the Petitioner testified that he understood the charges against him would be reinstated and his case scheduled for a trial if the court granted post-conviction relief. He also understood that the court would not impose probation and that if he were convicted after a trial, his sentence might be more or less than the time he had already served in confinement.

On cross-examination, the Petitioner identified a document he believed showed that he received probation. The document stated that he had been referred to a probation officer for a presentence investigation. He said presentence meant he was "presentence because [he] agreed to a plea agreement[]." He said that at that time, he was "halfway sentenced, 'cause now I done pleaded to this probation." He agreed, though, the document stated, "You are applying for probation." He said the transcript showing he pleaded guilty to theft and assault

on February 22, 2011, was incorrect. He denied appearing in court on February 22 and said he signed the plea agreement for eight years' probation in March 2011. He denied signing the plea agreement stating that the manner of service would be determined by the trial court and knowing who signed his name.

The Petitioner testified that although he did not sign the February 22, 2011 plea agreement, his signature was on the document. He said he pleaded guilty on March 31, 2011, and paid probation fees on March 8, 2011. When asked how he could pay probation fees before pleading guilty, he said it was because he agreed to probation. He said the transcript showing that the trial court advised him that he was applying for probation and that the court would decide whether to impose probation was "fabricated." He denied that anyone asked him if he understood he might not receive probation. He said that the subsequent trial judge did not preside over his guilty plea hearing and that the original trial judge did not resign until March 2011.

The Petitioner testified that he recalled a sentencing hearing was scheduled after he pleaded guilty and that he thought he was going to receive probation at the hearing. He said he received a letter from probation officer Susan Wilder stating that his plea agreement was "threaded." He said that threaded meant his plea agreement showing he received probation was "torn up, replaced . . . with this waiver." The letter the Petitioner received from Ms. Wilder was received as an exhibit. The letter stated that the Petitioner had been referred to Ms. Wilder for the purpose of completing a presentence investigation and requested he complete certain tasks and bring documentation to their meeting.

The Petitioner presented the trial court with an "Apply for Probation Handout." Although the Petitioner believed the document showed he received probation, the form was from trial counsel's law firm and stated that the Petitioner was applying for "some form of probation/supervised release instead of serving this sentence within the prison system[.]" The document explained that the Petitioner needed to appear at his next court date, know his relevant docket numbers, remain drug free, schedule an interview within three days of receiving Ms. Wilder's letter, and "make a payment - at least $10" before his next court appearance. It stated that if the Petitioner complied with these requests, his "chances of receiving probation increase[d] significantly." The handout was received as an exhibit. The presentence report was also received as an exhibit.

The waiver of a trial by jury and request for acceptance of a guilty plea was received as an exhibit. The form shows that the Petitioner's signature was dated February 22, 2011, and that the form was filed with the court on the same day. The form shows that the Petitioner would plead guilty to theft and assault, would receive an effective eight-year

sentence, and would apply for probation. The order accepting the Petitioner's guilty pleas was filed with the court on the same day and signed by the second trial judge.

The trial court denied post-conviction relief. Regarding the trial judge who presided over the Petitioner's guilty plea hearing, the court noted that as a matter of public record, the original trial judge took a leave of absence on January 31, 2011, which was before the guilty plea hearing on February 22. The court found that the guilty plea hearing transcript showed the second trial judge presided over the hearing. The court noted that the Petitioner's "mistake of fact" called into question the Petitioner's "memory and grasp of the relevant facts" regarding his post-conviction claim.

The trial court found that the record from the guilty plea hearing and the waiver of a trial by jury and request for the acceptance of a guilty plea form "clearly delineate[]" that the Petitioner would receive an effective eight-year sentence and would apply for probation. The court noted the exchange between the Petitioner and the second trial judge regarding the Petitioner's applying for probation and the Petitioner's stating he understood that the trial court would determine the manner of service.

The trial court found that the Petitioner presented "little evidence" regarding counsel's performance during the plea negotiations and that although only the Petitioner's testimony was presented at the post-conviction hearing, his testimony was "belied by both the plea form and the transcripts" of the guilty plea and sentencing hearings. The court found that even if it were to assume counsel failed to explain the plea agreement and the Petitioner's signature on the waiver form was forged, the second trial judge "clearly explained" to the Petitioner that he was applying for probation, not receiving probation under the plea agreement, and that the judge would determine whether the Petitioner received probation. The trial court denied relief. This appeal followed.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

The United States Supreme Court has held that a plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North*

*Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

We conclude that record does not preponderate against the trial court's factual findings from which it concluded that the Petitioner knowingly, voluntarily, and intelligently entered his guilty pleas. The record shows that at the guilty plea hearing, the trial judge reviewed with the Petitioner the charges against him and confirmed that he was pleading guilty to theft and assault without an agreement regarding the manner of service. The court asked if the Petitioner understood that by pleading guilty, he was stipulating that he intentionally and knowingly took items from Mr. Zip with the intent to deprive the owner of the items and that he committed a bodily assault on an individual. The Petitioner stated he understood. The court explained that the Petitioner would receive an eight-year sentence pursuant to the plea agreement, and the Petitioner responded that he understood. The court noted that although the Petitioner was requesting probation, it was the court's decision whether to grant probation. The Petitioner said he understood he might or might not receive probation.

Although the Petitioner did not present counsel at the post-conviction hearing to testify regarding their discussion about the substance of the plea agreement, the trial court questioned the Petitioner's "memory and grasp of the relevant facts" surrounding the plea agreement. The record shows that even if counsel failed to explain adequately the terms of the plea agreement, the trial judge advised the Petitioner at the guilty plea hearing that the Petitioner was applying for probation, that the court would determine the manner of service, and that the Petitioner understood. The Petitioner failed to show by clear and convincing evidence that counsel provided deficient performance or that he was prejudiced by counsel's performance. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE