IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2018

**DARRELL TATE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hawkins County**
**No. CC-16-CR-44    John F. Dugger, Judge**

_____

**No. E2017-02104-CCA-R3-PC**

_____

The Petitioner, Darrell Tate, appeals from the Hawkins County Criminal Court's dismissal of his petition for post-conviction relief from his 2015 guilty pleas to initiating the manufacture of methamphetamine, possession of drug paraphernalia, and failure to appear, for which he is serving a sixteen-year sentence. The Petitioner contends that his guilty pleas were involuntary. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Whitney Bailey, Kingsport, Tennessee, for the appellant, Darrell Tate.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Dan E. Armstrong, District Attorney General; and Lindsey W. Lane, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Petitioner's February 6, 2015 negotiated plea agreement, pursuant to which he was sentenced as a Range II offender and ordered to serve sixteen years' incarceration at 35% service.

At the guilty plea hearing, the State and the Petitioner agreed to waive the formal presentation of the evidence, and the State introduced a written statement of the evidence as an exhibit. The statement reflects the following:

> On [June 9, 2013], Officer Whitaker responded to Derrick Park in regards to a female causing a disturbance. He located [the] female[,] identified as

Amanda Rodriquez[, who was] operating a green Honda. He directed [Rodriquez] to leave the park. After she left[,] Whitaker observed a bag near the area of Rodriquez's vehicle that contained components used to manufacture methamphetamine. The components were salt, drano, ammonia nitrate, acid, funnels, and bottles containing these items in the midst of a cook. Officer Whitaker secured the scene and [Detective Kevin Grigsby] located Rodriquez at a local market. Upon [Detective Grigsby's] speaking with her and advising her of her *Miranda* Rights[,] she implicated herself and her boyfriend[,] [the Petitioner,] as the persons in possession of the meth lab items. She was arrested and we searched for [the Petitioner,] who was located the next day near the entrance to the park. Upon [Detective Grigsby's] speaking with [the Petitioner] about the lab items located, [Detective Grigsby] conducted a pat down of [the Petitioner] for safety and [the Petitioner] stated he possessed a needle in his pants pocket. [Detective Grigsby] retrieved the needle and located a white gallon size bag with white powder residue. When asked[, the Petitioner] stated it was "Nitrate" and that he was "only attempting to learn the process." [The Petitioner] was then arrested. When [the Petitioner] was advised [of his] *Miranda* [rights,] he originally wanted a lawyer but made a voluntary confession and signed a statement at the jail that implicated himself and Rodriquez.

The trial court reviewed the charged offenses with the Petitioner, and the Petitioner said that he understood the offenses. The Petitioner acknowledged signing a Waiver of Rights and Plea of Guilty form and said that he read and understood the form. The court informed the Petitioner of his rights to a jury trial, to confront witnesses, to present witnesses in his defense, to remain silent, and to plead not guilty. The Petitioner stated that he understood those rights and that he was waiving his rights. When asked whether the Petitioner was freely and voluntarily pleading guilty, the Petitioner said, "Yes, sir." The Petitioner acknowledged that he was not being forced, threatened, or pressured to plead guilty. The Petitioner said that he understood the plea agreement and the sentences and that he was pleading guilty because he was guilty. When asked whether he was satisfied with counsel's representation, the Petitioner said, "Yes, sir." Counsel confirmed for the court that he had discussed the prosecution reports and the discovery with the Petitioner. When asked whether the prosecution reports and the discovery were "fair statement[s] of the evidence against you," the Petitioner answered, "Yes, sir."

The trial court accepted the Petitioner's guilty pleas and sentenced the Petitioner in accordance with the plea agreement to sixteen years' incarceration. The Petitioner filed a pro se post-conviction petition raising multiple issues. Post-conviction counsel was appointed, and the Petitioner proceeded to the post-conviction hearing arguing only that his guilty pleas were involuntary.

-2-

## Post-Conviction Proceedings

At the post-conviction hearing, the Petitioner testified that he pleaded guilty to manufacturing methamphetamine and failure to appear and that he was represented at the guilty plea hearing by counsel. The Petitioner stated that he met with counsel on several occasions to discuss his case and that he received "correspondence" from counsel while he was incarcerated before pleading guilty. The Petitioner said that counsel filed a motion for discovery and that he and counsel reviewed the discovery.

The Petitioner stated that counsel told him about photograph evidence, which was not included in the discovery, that he did not view the photographs before pleading guilty, and that counsel said the photographs "didn't matter." The Petitioner stated that he learned of the photographs on the day of the guilty plea hearing, that the plea agreement paperwork had been completed, and that he believed it was too late to "back out" of the agreement. The Petitioner said that counsel said the photographs reflected a "one-pot methamphetamine lab being destroyed" and that counsel never saw the photographs. The Petitioner stated that he relied on counsel's description of the photographs and that he would have liked to have viewed them before pleading guilty. The Petitioner said that his lack of opportunity to see the photographs led him to involuntarily and unknowingly plead guilty.

On cross-examination, the Petitioner testified that he met with counsel several times before the guilty plea hearing, that he received a copy of the discovery, and that counsel sent him "a narrative of what he thought, his opinion in the case." The Petitioner stated that he and counsel reviewed the plea agreement and prepared the plea agreement paperwork before the hearing. The Petitioner said that he "pointed out some discrepancies in the [discovery] motion, you know, about me being charged with initiation of process of manufacturing and there was [not a] one-pot meth lab and that's when he told me about the photographs." The Petitioner acknowledged that the photographs could have been "damaging" to his case.

The Petitioner testified that counsel explained the evidence against him and that counsel provided a memorandum outlining the applicable law and the evidence in the case during their initial meeting. The Petitioner acknowledged that he confessed to police officers and signed a pretrial statement. The Petitioner stated that he signed a Waiver of Rights form and that counsel met with him twice before the guilty plea hearing. The Petitioner said that counsel did not change his opinion of the evidence or his advice after speaking with the Petitioner about the photographs. The Petitioner stated that he never asked to view the photographs before pleading guilty. The Petitioner said that counsel reviewed the sentencing range calculations with him, that he was aware he received the minimum sentences for a Range II offender, and that he understood he could be resentenced if he received post-conviction relief. He understood that he could receive

-3-

a substantially greater sentence if he were found guilty after a trial and that his sentences could be enhanced because the offenses occurred at a public park.

Counsel testified that he was appointed to represent the Petitioner, that he met with the Petitioner three times before the guilty plea hearing, and that he filed a motion for discovery. Counsel stated that he sent the Petitioner a "Memorandum of Discovery," which explained the contents of discovery and his opinion relative to the case. Counsel said that he spoke with the Petitioner "at great length about the evidence against him." Counsel stated that he read the Petitioner's pretrial statement, that the Petitioner wanted to suppress the statement, and that he told the Petitioner the statement could not be suppressed. Counsel said that the Petitioner confessed to the police during the arrest, that officers questioned him about a "meth lab in the park," and that the Petitioner told the police he "just wanted to learn the process." Counsel said that he told the Petitioner that even if his written statement were suppressed, his oral statement to the police would be "very damaging."

Counsel testified that after speaking with the Petitioner about the offenses and possible sentences, he told the Petitioner that he thought a jury would find the Petitioner guilty and that the Petitioner authorized him to negotiate a plea agreement with the State. Counsel said that the Petitioner had an extensive criminal history, that the State offered the Petitioner a sentence of sixteen years' incarceration, and that the Petitioner accepted the offer.

Counsel testified that a few weeks before the guilty plea hearing, the prosecutor called to inform him that photographs of the evidence were not included in the discovery. Counsel said that the prosecutor described the photographs and asked whether counsel wanted to view them. Counsel stated that he did not think he needed to view the photographs because the evidence against the Petitioner was overwhelming. Counsel said that on the day of the hearing, he informed the Petitioner about the photographs, that he told the Petitioner he had not seen the photographs, and that he told the Petitioner he understood the photographs reflected items used to manufacture methamphetamine. Counsel stated that he advised the Petitioner, based on the Petitioner's oral confession and written statement, to plead guilty. Counsel said the Petitioner did not ask to view the photographs before pleading guilty.

On cross-examination, counsel testified that he did not recall the Petitioner's claiming that the evidence was inconsistent in discovery, that the majority of their meetings were spent discussing the suppression of the Petitioner's written statement, and that he did not recall the Petitioner's saying that he did not write the statement. Counsel stated that he never visited the public park where the Petitioner was arrested and that he did not know where inside of the park the photographs were taken. Counsel said that he had not worked previously with the prosecutor in the Petitioner's case and that he did not know whether the prosecutor was trustworthy. Fifteen photographs were received as an

exhibit and reflected pliers, a screwdriver, a funnel, soft drink bottles, latex gloves, plastic tubing, a salt container, a Drano container, and an empty peanut butter jar.

The post-conviction court dismissed the Petitioner's petition for relief in a written order. The court determined that the Petitioner signed a written statement confessing to the offenses and that the Petitioner gave an oral confession to police officers during his arrest. The court stated that at the post-conviction hearing, the Petitioner testified that the prosecution report and the discovery accurately reflected the evidence against him. The court determined that counsel prepared a memorandum of the discovery for the Petitioner, that counsel informed the Petitioner of the photographs before he pleaded guilty, and that the photographs reflected items commonly used to make methamphetamine. The court found that the photographs were not exculpatory and that the photographs corroborated the Petitioner's confessions. The court determined that the Petitioner made a "conscious decision to enter his guilty plea[s] freely and voluntarily without seeing the photographs." This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

The Petitioner contends that his guilty pleas were involuntary and unknowing because he did not view the photographs before pleading guilty. The Petitioner argues that counsel failed to "view crime scene photographs, complete an independent investigation, and thus provide [the] Petitioner with a complete copy of the discovery." The State responds the post-conviction court did not err by dismissing the Petitioner's request for post-conviction relief.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion,

terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record reflects that the Petitioner entered knowing, voluntary, and intelligent guilty pleas. At the post-conviction hearing, the Petitioner testified that he met with counsel on several occasions to discuss his case, that he received a copy of the discovery, and that counsel sent him a memorandum relative to the evidence contained in the discovery. Counsel testified that he read the Petitioner's written statement, that he informed the Petitioner the statement could not be suppressed, and that the Petitioner confessed to the offenses during his arrest. The Petitioner stated that counsel informed him on the day of the of the guilty plea hearing that the photograph evidence was not included in the discovery, that the Petitioner did not ask to view the photographs, and that the Petitioner acknowledged the photographs could have been "damaging" to his case.

The guilty plea hearing transcript reflects that the Petitioner was asked whether he was freely and voluntarily pleading guilty and that the Petitioner responded, "Yes, sir." The Petitioner said that he had not been forced, threatened, or pressured into pleading guilty and that he was pleading guilty because he was guilty. The Petitioner stated that he was satisfied with counsel's representation. We conclude the record supports the post-conviction court's determination that the Petitioner entered knowing, intelligent, and voluntary guilty pleas. The Petitioner is not entitled to relief.

The judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE